UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CURTIS CONOVER,  : Civil Action No. 11-1614 (JBS)
 :
       Petitioner,  :
 :
    v.  : **OPINION AND FINDINGS OF FACT**
 : **ON LIMITED REMAND**
UNITED STATES OF AMERICA,  :
et al.,  :
 :
       Respondents.  :

**APPEARANCES:**

    CURTIS CONOVER, Petitioner pro se
    #31462-160
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey 08640

**SIMANDLE,** Chief Judge

This matter comes before the Court by remand from the United States Court of Appeals for the Third Circuit, "for the limited purpose of determining when Petitioner deposited his Notice of Appeal in the internal mail system at FCI Fort Dix and any other facts that might be relevant to our appellate jurisdiction." (Docket Entry # 12.) On May 24, 2013, this Court issued an Order to Show Cause directing the parties to show cause in writing as to whether Petitioner's Notice of Appeal was timely filed pursuant to the "prison mailbox rule."

(Dkt. # 13.) Petitioner did not respond to the Court's May 24th Order, but Respondents did provide the Court with an answer and supporting documentation as directed. (Dkt. ## 14, 15.)

For the reasons set forth below, the Court finds that the prison mailbox rule does not operate in this instance, and that the Notice of Appeal was not timely filed.

## I. BACKGROUND

On March 23, 2011, Petitioner, Curtis Conover, filed a habeas petition under 28 U.S.C. § 2241, in the United States District Court for the District of New Jersey, challenging his sentence computation by the Bureau of Prisons ("BOP"), and seeking fifteen (15) months jail credit towards his federal sentence. (Dkt. # 1.) Thereafter, on February 23, 2012, this Court denied the habeas relief Petitioner sought. (Dkt. ## 7, 8.)

Petitioner filed a Notice of Appeal, bearing an unsigned Certificate of Service dated March 2, 2012, which was received by the Clerk of the U.S. District Court and entered on the docket on January 17, 2013. (Dkt. # 9.) Petitioner's Notice of Appeal was contained in an envelope properly addressed to the Clerk of Court, with proper postage, bearing the postmark "Trenton NJ 085 - 14 JAN 2013 PM61." (Dkt. # 9 at p.3.) The unsigned Certificate of Service indicated two addressees, the

Clerk of Court for the United States District Court in Camden, New Jersey, and the Office of the United States Attorney in Camden, New Jersey.  While the Clerk's Office received the Notice of Appeal on January 17, 2013,[1] as indicated above, the United States Attorney's Office did not receive any mailed Notice of Appeal from Petitioner.  In particular, the Assistant United States Attorney ("AUSA") assigned to this matter avers that no mailed copy of the Notice of Appeal was received at any time in 2012, or in January 2013.  Rather, the AUSA learned of the Notice of Appeal on January 18, 2013, by Notice of Electronic Filing for Docket # 9.  (Declaration of Irene E. Dowdy, AUSA, at ¶¶ 2-4.)

On May 21, 2013, the Third Circuit issued an Order remanding this case to this Court "for the limited purpose of determining when Petitioner deposited his Notice of Appeal in the internal mail system at FCI Fort Dix and any other facts that might be relevant to determine appellate jurisdiction." (Dkt. # 12.)  The Third Circuit noted that Petitioner was required to file his notice of appeal by April 24, 2012 in order to confer appellate jurisdiction.  See Fed.R.App.P. 4(a)(1)(B) (notice of appeal must be filed within 60 days of entry of

---

[1] There is no record on CM/ECF that Petitioner's Notice of Appeal was received by the Clerk of Court on any date in 2012, or earlier than January 17, 2013.

3

judgment). However, the Third Circuit observed a discrepancy between the March 2, 2012 date on the Notice of Appeal (within the 60-day filing period) and the January 2013 postmark on the envelope containing the Notice of Appeal. Upon remand, this Court issued an Order, on May 24, 2013, directing the parties to show cause in writing as to whether Petitioner's Notice of Appeal was timely filed pursuant to the "prison mailbox rule." (Dkt. # 13.)

On June 17, 2013, Respondents filed a reply to the Court's Order to Show Cause, with declarations and exhibits from FCI Fort Dix officials. (Dkt. ## 14, 14-1, 14-2, 14-3, 14-4, and 14-5.) The first declaration from Sonia Diaz-N'Diaye, Supervisory Correctional Systems Specialist at FCI Fort Dix, identified the procedures at FCI Fort Dix for outgoing inmate mail, including both general correspondence and special/legal mail. (Dkt. ## 14-1, 14-2.) Ms. Diaz also provided a record showing Petitioner's use of special/legal mail during pertinent time periods. (Dkt. # 14-3.)

Ms. Diaz relates that federal inmates may send outgoing mail under two procedures: (1) general correspondence, or (2) "special/legal mail." Outgoing special/legal mail includes correspondence sent by federal inmates to the United States Courts, U.S. Attorneys, attorneys, federal and state law

enforcement officers, members of the federal or state executive and legislative branches of government, and representatives of the news media. Outgoing general correspondence includes any mail other than special/legal mail. (Dkt. # 14-1 and 14-2, Diaz Declaration at ¶ 4, Exhibit A – July 1, 2011 Institution Supplement on Mail Management.) *See also* 28 C.F.R. § 542.2(a), (c); Bureau of Prisons ("BOP") Program Statement 5265.14, <u>Correspondence</u> at 3-4.

Ms. Diaz also notes that, because FCI Fort Dix is a low security level facility, inmates may seal all of their outgoing mail and that mail is sent out without being opened or inspected by BOP staff. (Dkt. # 14-1, Diaz Decl. at ¶ 7.) *See also* 28 C.F.R. § 540.14(c)(1); BOP Program Statement 5265.14 at 8.

FCI Fort Dix is comprised of two compounds housing inmates in the general population. There is only one Mail Room serving both compounds, which is located in the Core Services Building. The Mail Room operates Monday through Friday, from 7:30 AM to 4:00 PM, excluding federal holidays. (Dkt. # 14-1, Diaz Decl. at ¶ 8.)

There is a mail depository for outgoing general correspondence at each inmate housing unit. To utilize outgoing general correspondence, an inmate seals his mail item and places it in his housing unit's mail depository. Each weekday morning

5

(Monday through Friday), the Morning Watch Compound Officer collects outgoing mail from the general correspondence mail depositories in each housing unit and delivers the collected outgoing mail to the vestibule of the Compound Control Center for safekeeping until the Mail Room staff arrive. The Mail Room staff retrieves the outgoing general correspondence mail from the vestibule by 7:30 AM, and takes that mail to the Mail Room in the Core Services Building. Then all outgoing mail is taken by the Mail Room staff to the local United States Post Office by 9:00 AM each day, Monday through Friday, excluding federal holidays. FCI Fort Dix does not maintain a log or any other record of outgoing general correspondence sent by inmates. (*Id.*, ¶¶ 9, 12 and Ex. 1 at p. 4.)

Inmates at FCI Fort Dix also may send outgoing mail addressed to the courts and attorneys under the special/legal mail procedure. An inmate must hand deliver his outgoing special/legal mail to his Unit Team. The Unit Team enters the outgoing special/legal mail item in a unit logbook, which records the date, inmate name and register number, addressee, housing unit number and staff signature. Unit staff then delivers the special/legal mail to designated mail receptacles located by the Compound Control Center vestibule. These designated receptacles are different than those receptacles used

for outgoing general correspondence mail.  The Mail Room staff retrieves the special/legal mail from the designated receptacles by 7:30 AM, and takes the mail to the Mail Room where it is stamped as "special/legal mail."  The Mail Room staff then delivers the outgoing special/legal mail, together with the outgoing general correspondence mail, to the U.S. Post Office by 9:00 AM, Monday through Friday, excluding federal holidays.  (*Id.*, ¶¶ 10, 12, Ex. 1 at p. 4.)

Certified mail also is made available to FCI Fort Dix inmates.  A logbook is maintained by staff which records each item sent by inmates using certified mail.  (*Id.*, ¶¶ 6, 11.)  There is no record or suggestion that Petitioner used certified mail for the mailing of his Notice of Appeal.

FCI Fort Dix inmates may purchase postage stamps at the inmate commissary.  28 C.F.R. § 540.21.  In this regard, Respondents attach a declaration by Nakia Grimes, Trust Fund Supervisor at FCI Fort Dix.  Ms. Grimes reviewed and attached records of Petitioner's purchase of stamps at FCI Fort Dix during the relevant time period, namely, the BOP's TRUFACS system (Trust Fund Accounting and Commissary System).  In particular, Ms. Grimes attests that the TRUFACS system shows that Petitioner purchased stamps between January 1, 2011 and May 28, 2013, as follows:

7

```
05/16/2011            30 one-cent stamps
06/13/2011            one $9.20 stamp book (20 stamps)
08/02/2011            five $.46 stamps
09/20/2011            one $9.20 stamp book (20 stamps)
10/13/2011            three $.46 stamps
11/23/2011            two $.46 stamps
12/14/2011            three $.46 stamps
01/26/2012            two $.46 stamps
02/16/2012            three $.46 stamps
```

(Dkt. # 14-4, Grimes Decl. at ¶ 2, and Dkt. # 14-5, Ex. A to Grimes Decl.)

Petitioner has been confined at FCI Fort Dix in Unit 5711 since March 26, 2010. The logbooks for special/legal mail sent by inmates in Unit 5711 reveals that Petitioner used special/legal mail on March 18, 2011, to send two items, namely, to the "U.S. District Court" and the "US Attorney District of NJ." (Diaz Decl. at ¶ 13; Ex. 2 [Unit 5711 logbooks], p. 1.) The Court takes judicial notice that the petition filed in this matter on March 23, 2011, contained a Certificate of Service signed by Petitioner, in which Petitioner certified that he mailed his petition via first class prepaid postage from the FCI Fort Dix on March 17, 2011, to the United States District Court in Camden, New Jersey, and to the U.S. Attorney's Office in Camden, New Jersey. (Dkt. # 1 at 10.)

It does not appear that Petitioner used special/legal mail again until January 2013, when he sent out several items via special/legal mail. Namely, on January 23, 2013, Petitioner

8

sent legal mail to Chief Richard Nunes at the Newark Municipal Court; on January 30, 2013, Petitioner sent two items of legal mail, one to the Clerk of the United States Court of Appeals in Philadelphia, PA, and another to the Clerk of the United States District Court in Camden, New Jersey; and finally, on January 31, 2013, Petitioner sent legal mail to the Federal Public Defender's Office in the Northern District of Ohio, Cleveland, Ohio. (Diaz Decl. at ¶ 14, Ex. 2 at p. 7.)

There is no record in the special/legal mail logbooks for Petitioner's Unit that Petitioner sent any item by special/legal mail in February, March or April 2012. (Diaz Decl. at ¶ 13, Ex. 2 at pp. 2-6.)

## II. DISCUSSION

As stated above, this case was remanded to this Court "for the limited purpose of determining when Petitioner deposited his Notice of Appeal in the internal mail system at FCI Fort Dix and any other facts that might be relevant in determining appellate jurisdiction." (Dkt. 12.) In this case, Petitioner was required to file his Notice of Appeal by April 24, 2012, in order to confer appellate jurisdiction upon the United States Court of Appeals for the Third Circuit. *See* Fed.R.App.P. 4(a)(1)(B) (notice of appeal must be filed within 60 days of entry of judgment).

A prisoner's notice of appeal in a civil or criminal case is "timely if it is deposited in the institution's internal mail system on or before the last day for filing." Fed.R.App.P. 4(c)(1); *Flowers v. Phelps*, 2013 WL 718752, *3, n. 4 (3d Cir. Feb. 28, 2013). The "prison mailbox rule", which deems an inmate's filing as filed on the date it is delivered to prison officials for mailing, was recognized by the Supreme Court in *Houston v. Lack*, 487 U.S. 266 (1988). *See Houston*, 487 U.S. 270; *Pabon v. Mahoney*, 654 F.3d 385, 391 n. 8 (3d Cir. 2011); *Pearson v. Prison Health Service*, No. 11-3897, 2013 WL 870337, *2 (3d Cir. Mar. 11, 2013).

In *Houston*, the Supreme Court examined the unique circumstances confronting a prisoner proceeding *pro se*, such as an inmate's inability to take steps other litigants can to monitor the processing of a notice of appeal and ensure that the clerk receives and stamps it within the appeal period. *Houston*, 487 U.S. at 270-73. The Supreme Court also observed that if there is a delay attributable to prison authorities rather than postal procedures, a prisoner is unlikely to be able to prove that the late filing resulted from the prison's delay in depositing the appeal in the mail or the clerk's failure to properly stamp the notice when it is received. *Id*. Thus, the Supreme Court created "a bright-line rule, not an uncertain

one," by holding that "the notice of appeal was filed at the time the habeas petitioner delivered it to the prison authorities for forwarding to the court clerk," where there are established prison procedures for recording the date and time at which papers are received by prison officials in the prison's mail room. *Id*. at 275-76.

It is Petitioner's burden to demonstrate that there is jurisdiction over his appeal and that Rule 4(c)(1) applies to him. *See* Fed.R.App.P. 4(c)(1) ("Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first class postage has been prepaid."); *Porchia v. Norris*, 251 F.3d 1196, 1198 (8th Cir. 2001) ("[A]n appellant must prove that the necessary preconditions to the exercise of appellate jurisdiction—including the timely filing of a notice of appeal—have been fulfilled."). *See also See Martin v. Attorney General of U.S.*, 466 F. App'x 106, 107 (3d Cir. 2012) (prison mailbox rule not applied where petitioner's certificate of mailing did not state that he mailed it to the court or gave it to prison authorities for mailing to the court); *Bond v. VisionQuest*, 410 F. App'x 510, 515 (3d Cir. 2011) (no presumption of the prison mailbox rule where Bond provided "no evidence—and does not even directly state—that he

provided the complaint to prison authorities to mail to the District Court."); *Council v. Nash*, 400 F. App'x 680, 682 (3d Cir. 2010) (petitioner did not submit a declaration or notarized statement as required under Rule 4(c)(1)).

In this instance, the Third Circuit commented that, except for the January 2013 postmark, Petitioner's Notice of Appeal otherwise appears to comply with the "facial requirement of Fed.R.App.P. 4(c), as it includes an unsworn declaration (pursuant 28 U.S.C. § 1746) and indicates that first-class postage was prepaid."  Accordingly, the Court of Appeals remanded this matter for this Court to determine whether Petitioner's Notice of Appeal was timely filed; more precisely, whether Petitioner deposited his Notice of Appeal in FCI Fort Dix's prison mail system on or about March 2, 2012, as indicated on his unsigned Certificate of Service.

Petitioner has provided no information in response to the Order to Show Cause.  Nor has Petitioner raised any argument in reply to the Respondents' answer to this Court's May 24, 2013 Order.  In short, Petitioner advanced no argument that Rule 4(c)(1) should apply to the filing of his notice of appeal.  Thus, the only evidence to support a timely filing is Petitioner's unsigned Certificate of Service that accompanied his Notice of Appeal.

In contrast, Respondents provided documentation and information to suggest that Petitioner did not send his Notice of Appeal on or about March 2, 2012. First, in discussing the internal mail system at FCI Fort Dix regarding both inmate general correspondence procedures and special/legal mail procedures, Respondents contend that Petitioner did not utilize the special/legal mail procedure because there was no record of it in the Unit logbooks for the pertinent months of February, March and April 2012.[2] It was plain that Petitioner knew of the special/legal mail procedures and used it on other occasions. For instance, Petitioner used the special/legal mail service when filing his petition in this case. He also used it on three occasions in other legal matters in January 2013, unrelated to this action. Therefore, because there was no log entry for special/legal mail service of the Notice of Appeal by Petitioner, Respondents contend that Petitioner used the outgoing general correspondence procedure.

Second, Respondents argue that if Petitioner used the inmate general correspondence procedure to mail his Notice of Appeal, it was done out of time, sometime in mid-January 2013. Again, based on the internal mail system at FCI Fort Dix for

---

[2] The Court denied the habeas petition in this matter on February 23, 2012. Petitioner had 60 days from this date, or until April 24, 2012, to timely file his notice of appeal pursuant to Fed.R.App.P. 4(a)(1)(B).

outgoing general correspondence, Respondents comment that, if Petitioner used the general correspondence procedure in mailing his Notice of Appeal on the date of March 2, 2012, as purportedly indicated by the unsigned Certificate of Service, under the usual practices of the FCI Fort Dix Mail Room, the mail would have been collected on Monday, March 5, 2012, by the Morning Watch Compound Officer, taken to the Control Center vestibule, picked up by the Mail Room staff, and then delivered to the U.S Post Office by 9:00 AM on March 5, 2012. The ordinary course of mail delivery by the U.S. Postal Service is typically three to five days. Thus, the Notice of Appeal should have been received by the Clerk's Office between March 8, 2012 and March 11, 2012. There is no record of the Clerk's Office receiving the Notice of Appeal until January 2013.

Based on the evidence submitted, the Court concludes that the prison mailbox rule is not applicable here because there is no proof that the Notice of Appeal was deposited as special/legal mail with the internal mail system at FCI Fort Dix in or about March 2012. The Seventh Circuit observed that Fed.R.App.P. 4(c)(1) specifies that, when a prison has a particular system designed for legal mailings, the prisoner "must use that system to receive the benefit of" the mailbox rule. *Ingram v. Jones*, 507 F.3d 640, 644 (7th Cir. 2007)

Petitioner, plainly, did not comply with this requirement. There is simply no record of Petitioner using the special/legal mail at FCI Fort Dix during the relevant time period for a timely Notice of Appeal, namely February, March or April 2012. Specifically, the pertinent Unit logbooks show no such entries for special/legal mail on behalf of Petitioner during this time. Moreover, there are entries in the Unit logbook recording that Petitioner used special/legal mail on other unrelated occasions. The lack of any entry for Petitioner using special/legal mail during the relevant time period strongly suggests that he did not use the special/legal mail system when mailing his Notice of Appeal. Finally, although "Legal Mail" was typewritten on the outside of the envelope containing the Notice of Appeal, the FCI Fort Dix mail Room uses a stamp for special/legal mail.

Thus, the Court finds it highly unlikely that Petitioner utilized the special/legal mail system at FCI Fort Dix when mailing his Notice of Appeal. Petitioner therefore cannot receive the benefit of the prison mailbox rule, and the Court must conclude that it was not timely filed under Fed.R.App.P. 4(c)(1). *See Morales v. McEwan*, No. EDCV 11-667-GHK (MAN), 2012 WL 632405, * 5 (C.D. Cal. Jan. 19, 2012) (not applying the prison mailbox rule where inmate submitted his petition to

another entity at the prison rather than the prison's Litigation Office as is required).

Further, this Court determines that Petitioner mailed his Notice of Appeal well after the 60-day filing deadline for his appeal by the outgoing inmate general correspondence procedures at FCI Fort Dix. This conclusion is based on the postmark date of January 14, 2013 on the envelope received by the Clerk's Office, and the fact that there is no record of the Clerk's Office having received the Notice of Appeal at any time in 2012. Had Petitioner actually mailed his Notice of Appeal on March 2, 2012, as indicated by the unsigned Certificate of Service, by the outgoing inmate general correspondence procedures established by FCI Fort Dix, Petitioner's mail would have been collected on March 5, 2012 and delivered to the U.S. Post Office the same date, and the normal course of postal delivery would be sometime between March 8, 2012 and March 11, 2012. As indicated above, there is no record of receipt of the Notice of Appeal by the Clerk of the Court in March 2012. The Notice of Appeal was not received by the Clerk until January 2013, long after the 60-day filing deadline on April 24, 2012.

Therefore, without any evidence to prove that the Notice of Appeal was deposited as special/legal mail with the established internal mail system at FCI Fort Dix, this Court finds that

Petitioner cannot rely on the prison mailbox rule for timely filing of his Notice of Appeal under Fed.R.App.P. 4(c)(1). The January 2013 postmark date is more indicative of the actual date of mailing than Petitioner's unsigned Certificate of Service dated March 2, 2012,[3] especially where there is no evidence that either the Clerk of the Court or the U.S. Attorney's Office in Camden, New Jersey have record of receiving the Notice of Appeal at any time in 2012. Accordingly, the Court concludes that the Notice of Appeal was filed in January 2013, long after the April 24, 2012 filing deadline necessary to confer appellate jurisdiction over Petitioner's appeal under Fed.R.App.P. 4(a)(1)(B).

III. CONCLUSION

For the reasons set forth above, this Court finds no evidence to confirm that Petitioner's Notice of Appeal was timely filed under the prison mailbox rule, consistent with the requirements of Fed.R.App.P. 4(c)(1). Rather, the January 14, 2013 postmark stamped on the envelope containing the Notice of Appeal shows that the Notice was filed almost nine months after the sixty-day deadline for filing a notice of appeal under

---

[3] The Court further notes that when Petitioner filed his habeas petition, the Certificate of Service accompanying the petition was signed by Petitioner. (Dkt. # 1.) Thus, the lack of Petitioner's signature on the Certificate of Service submitted with his Notice of Appeal is significant in suggesting that the Notice of Appeal was not mailed on March 2, 2012.

Fed.R.App.P. 4(a)(1)(B), which concluded on April 24, 2012.  An appropriate order setting forth these findings of facts follows.

                                          **s/ Jerome B. Simandle**
                                          JEROME B. SIMANDLE, Chief Judge
                                          United States District Court

Dated: **August 14, 2013**